*647 TEXTO COMPLETO DE LA SENTENCIA
El recurrente Domingo Pellot Rodríguez (Pellot) interesa la expedición del recurso de revisión de una resolución emitida por la Junta de Síndicos de la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura (Junta de Síndicos) de 5 de mayo de 2009.
Mediante dicho dictamen, la Junta de Síndicos confirmó la decisión de la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura (RETIRO) denegando su solicitud de los beneficios de pensión por incapacidad ocupacional al amparo de la Ley Núm. 447 de 15 de mayo de 1951, según enmendada. 3 L.P.R.A. see. 761 et seq.
Por los fundamentos que expondremos a continuación, confirmamos la decisión recurrida.
I
El recurrente Domingo Pellot Rodríguez, de 60 años de edad, trabajó para la Administración de Servicios Agrícolas de Isabela ocupando el puesto de Mecánico. El recurrente cotizó para el Sistema de Retiro un total de 8.5 años.
El 3 de noviembre de 1986, mientras el recurrente instalaba un tanque diesel a una máquina “caterpillar”, sufrió un accidente laboral. Debido a ello, se reportó al Fondo del Seguro del Estado (FSE) para recibir tratamiento, donde le relacionaron las siguientes condiciones: miositis cérvico dorsal y condición emocional. A su vez, el FSE le concedió al recurrente un diez por ciento (10%) de incapacidad en sus funciones fisiológicas generales.
Por otro lado, el 25 de noviembre de 1990, la Administración del Seguro Social determinó que el recurrente estaba total y permanentemente incapacitado desde mayo de 1996 y le otorgó los beneficios por incapacidad.
Así las cosas, el 6 de marzo de 1997 el recurrente presentó una solicitud de pensión por incapacidad. Trabada la controversia, y luego de un tortuoso trámite procesal, se celebró la vista adjudicativa formal. El 5 de mayo de 2009, la Junta de Síndicos emitió las siguientes determinaciones de hechos, las cuales transcribimos in extenso:
“1. El señor Domingo Pellot Rodríguez, apelante, nació el 7 de noviembre de 1948, cuenta con 60 años de edad. Se desempeñó en la Administración de Servicios Agrícolas de Isabela como Mecánico.
2. El señor Pellot Rodríguez se reportó a la Corporación de El Fondo del Seguro del Estado, en el siguiente caso:
a. Caso Núm. 87-03-00754-2: Accidente ocurrido el 15 de noviembre de 1986. En este caso se le relacionó las condiciones de miositis cervical, miositis dorsal y posteriormente, se le relacionó condición emocional.
3. El señor Pellot Rodríguez presentó una solicitud de pensión por incapacidad el 6 de marzo de 1997. Para la fecha en que presentó la solicitud de pensión por incapacidad, tenía acreditado ocho punto cincuenta (8.50) años de servicio acreditados en aportaciones al Sistema.
4. El 27 de mayo de 1997, la Administración de los Sistemas de Retiro le deniega la pensión por incapacidad porque de los informes médicos que constan en el expediente, al momento de tomar la determinación, se concluyó que se encuentra física y mentalmente capacitado para desempeñar cualquier función en el servicio público.
5. El 6 de junio de 1997, inconforme con la decisión de la Administración de los Sistemas de Retiro presentó Reconsideración.
6. El 31 de julio de 1998, la Administración de los Sistemas de Retiro se reafirma en la denegatoria a los beneficios de la pensión por incapacidad.
7. El 12 de agosto de 1998, inconforme con la decisión de la Administración de los Sistemas de Retiro, presentó Apelación ante la Junta de Síndicos.
*648 8. El 12 de octubre de 1998, se celebró un “Status Conference” en la Junta de Síndicos. En la conferencia, presidida por la Oficial Examinadora, Leda. Wanda Medina, la parte Apelante estuvo representada por la Leda. Teresita Arzuaga Resto y la parte Apelada por la Leda. Magaly Cruz Caballero. En la misma se presentó nueva evidencia y las partes indicaron estar preparadas para la celebración de la Vista Administrativa.
9. El 10 de febrero de 1999, se celebró Vista Administrativa en el Salón de Audiencias de la Junta de Síndicos. Durante la celebración de la Vista, presidida por la Oficial Examinadora, Leda. Wanda Medina, la parte Apelante estuvo representada por la Leda. Teresita Arzuaga Resto y la parte Apelada por la Leda. Magaly Cruz Caballero. La misma se suspendió debido a que hubo dudas sobre si la condición emocional fue relacionada por El Fondo. Se concedieron unos 30 días para presentar evidencia.
10. El 12 de mayo de 1999, se celebró una segunda Vista Administrativa en el Salón de Audiencias de la Junta de Síndicos. En la misma, presidida por la Oficial Examinadora, Leda. Wanda Medina, la parte Apelante estuvo representada por la Leda. Teresita Arzuaga Resto y la parte Apelada por la Leda. Magaly Cruz Caballero. Una vez iniciada la vista, la parte Apelante solicitó el Archivo Sin Perjuicio en espera de que El Fondo se expresara sobra (sic) la relación causal de la condición emocional.
11. El 21 de diciembre de 1999, la Junta de Síndicos notificó una Resolución en la que se ordena el Archivo Sin Perjuicio de la Apelación.
12. El 11 de junio de 2003, la Comisión Industrial de Puerto Rico notificó una Resolución en la que revoca a la Corporación de El Fondo del Seguro del Estado y relaciona la condición emocional.
13. El 3 de octubre de 2003, el señor Pellot Rodríguez solicita la reapertura del caso.
14. El 12 de diciembre de 2003, la Junta de Síndicos aprueba una Resolución en la que se ordena la reapertura del caso y la inclusión del caso en el calendario de Vistas.
15. El 9 de junio de 2004, se celebró una Vista Administrativa en el Salón de Audiencias de la Junta de Síndicos. En la misma, presidida por la Oficial Examinadora, Leda. Virgen Torres, la parte Apelante estuvo representada por la Leda. Susan Cordero y la parte Apelada por la Leda. Sandra Sosa. La parte Apelante solicitó la suspensión de la Vista Administrativa para que se evaluara la nueva evidencia médica presentada. La parte Apelada se opuso, ya que la parte Apelante tenía tiempo suficiente para presentar la evidencia. El caso continuó su curso y quedó sometido.
16. El 18 de junio de 2004, la parte Apelada presentó una Moción en la que solicita que la evidencia presentada no sea evaluada.
17. El 6 de febrero de 2006, la Junta de Síndicos notificó una Resolución en la que se confirma la decisión de la Administración de los Sistemas de Retiro, denegando los beneficios de mía pensión por Incapacidad Ocupacional.
18. El 8 de marzo de 2006, inconforme con la decisión de la Junta de Síndicos, presentó un recurso de Revisión de una Decisión Administrativa ante el Tribunal de Apelaciones caso Núm. KLRA-2006-00139.
19. El 26 de mayo de 2006, el Tribunal de Apelaciones notificó una Sentencia en la que ordena la devolución del caso a la Administración de los Sistemas de Retiro para que se evalúe la evidencia médica que le fue presentada y no evaluada.
20. El 28 de septiembre de 2006, la Administración de los Sistemas de Retiro, luego de evaluar la evidencia médica presentada, se reafirma en la denegatoria a los beneficios de la pensión por Incapacidad Ocupacional.
21. El 26 de octubre de 2006, inconforme con la decisión de la Administración de los Sistemas de Retiro, presentó una Apelación ante la Junta de Síndicos. En su escrito solicitó, además, que el Área de Determinación de Incapacidad evaluara la evidencia médica y determinara si la condición de miositis fue evaluada. La parte Apelada se allanó.
22. El 19 de marzo de 2007, la Administración de los Sistemas de Retiro, presentó una Moción en la que se indica que la evidencia fue evaluada y así fue notificado. *649 23. El 24 de mayo de 2007, se celebró un “Status Conference” en la Junta de Síndicos. En la conferencia, la parte Apelante estuvo representada por la Leda. Marinés Madera y la parte Apelada por la Leda. Sandra Sosa. Las partes indicaron estar preparadas para la celebración de la Vista Administrativa. Mientras, el Área de Determinación de Incapacidad evaluaría si una evidencia médica justificaba la devolución del caso.
24. El 27 de mayo de 2007, la parte Apelada indica que el Área de Determinación de Incapacidad entiende que la evidencia es acumulativa y que no amerita la devolución.
25. Para el 2 de abril de 2008, estuvo pautada una Vista Administrativa en el Salón de Audiencias de la Junta de Síndicos. La misma fue pospuesta a solicitud de la parte Apelante.
26. El 15 de septiembre de 2008, se celebró una Vista Administrativa en el Salón de Audiencias de la Junta de Síndicos. En la misma la parte Apelante estuvo representada por la Leda. Michelle Hernández y la parte Apelada por la Leda. Sandra Sosa. El caso quedó sometido para adjudicación por esta Junta.
27. La evidencia médica sobre las condiciones evaluadas por la Administración de los Sistemas de Retiro, que consta en el expediente, al momento de tomar su determinación fue evaluada en su totalidad. De la misma se destaca la siguiente:
a. Evaluación Mental, suscrita por el Dr. José Plumey, el 18 de julio de 1990. Se describe a una persona con composición atlética, sin trastornos en la marcha ni en articular, afecto adecuado al pensamiento, ansioso, inquieto, intranquilo, desorientado en tiempo, con alucinaciones auditivas y visuales, flujo de pensamiento normal, lógico, coherente, relevante, sin delirios de grandeza, con ideas de persecución, paranoides y de referencia, con ideas suicidas, juicio e introspección menoscabadas. Se le diagnosticó con depresión mayor con síntomas sicóticos vs. síndrome cerebral orgánico atípico o mixto.
b. Evaluación Mental, suscrita por el Dr. José Plumey, el 25 de octubre de 1990. Se describe a una persona con constitución atlética, sin trastornos en la marcha, buen contacto visual, afecto adecuado al pensamiento, ansioso, inquieto, desorientado en tiempo, alucinaciones auditivas y visuales, flujo de pensamiento normal, lógico coherente, relevante, sin ideas de grandeza, ideas de persecución, paranoides y de referencia, sin ideas suicidas, juicio e introspección menoscabadas. Se le diagnosticó depresión mayor con síntomas sicóticos.
c. Evaluación Médica, suscrita el 11 de junio de 1991. En la parte neurológica de la evaluación no se detalla deficiencia alguna. En la parte músculo esqueletal de la evaluación, no se detalla deficiencia alguna. En la parte emociona (sic) se describe ansioso, inquieto, desorientado en tiempo, con memoria no adecuada, juicio e introspección menoscabada. Se le diagnosticó depresión mayor con psicosis.
d. Examen Radiológico, consistente en una radiografía de la espina cervical de 9 de marzo de 1993. “Impression”: Normal cervical spine.”
e. Examen Radiológico, consistente en una radiografía de la espina cervical, realizada el 7 de septiembre de 1993. “Impression: normal cervical spine.”
f. Evaluación Médica, suscrita el 15 de octubre de 1996. En la parte neurológica de la evaluación, no se detalla anormalidad alguna. En la parte músculo esqueletal, se indica que tiene una limitación de movimientos en la región cervical. En la sección de la condición emocional se señala que es paciente de una condición mental en tratamiento desde hace unos 8 años. Se le diagnosticó depresión severa.
g. Evaluación Neurológica, suscrita por la Dra. Evelyn Rodríguez Aja, el 1 de mayo de 1997. Se describe a una persona limpia, cooperadora, presta atención, orientada y con buena memoria, con afecto adecuado, sistema motoro (sic) normal, sin atrofia, con fuerza muscular de 5/5 en todo el cuerpo, reflejos profundos normales, sin espasmo muscular, sistema sensorial normal. Se le diagnosticó esguince severo dorso lumbar con una buena prognosis.
h. Revisión Médica del Expediente, suscrita por el Dr. Rafael Díaz Montaño, el 19 de mayo de 1997. En la misma se indica que las condiciones que padece la parte Apelante no cumplen con los requisitos de severidad del listado 1.05C.
*650 i. Revisión Médica del Expediente, realizada por el Dr. José Cuebas, el 14 de julio de 1997. En el mismo se indica que la condición que padece la parte Apelante no es una severa y que no hay que entrar a especificar listado alguno.
j. Revisión Médica del Expediente, suscrita por el Dr. Manuel Colón Vargas, el 13 de diciembre de 1997. Se recomienda evaluación del psiquiatra de la Administración de los Sistemas de Retiro.
k. Evaluación Mental, suscrita por el Dr. Rodrigo Freytes, el 26 de marzo de 1998. Surge de la evaluación que no ha sido hospitalizado por razón emocional y no ha tenido remisión de síntomas. Se describe a un varón bien desarrollado y nutrido, con buena higiene personal, alerta, cooperador, espontáneo actividad psicomotora normal, lógico, coherente, relevante, sin asociaciones laxas, sin bloqueos, sin delirios, sin fobias, sin ideas obsesivas, con ruminaciones suicidas, indica que oye voces, orientado en persona y tiempo, parcialmente menoscabado en lugar, memoria inmediata afectada, memoria reciente y remota conservada, juicio parcialmente menoscabado, introspección parcialmente menoscabada, presta atención. Añade que no realiza funciones en el hogar, lee la Biblia, no ve la televisión, no escucha la radio, visita a su mamá, difícil hacer nuevos contactos sociales, no participa en actividades de grupos, con dificultad para concentrase, reacciona con depresión en situaciones de estrés y no padece de ataques de pánico. Se le diagnosticó trastorno depresivo mayor, moderado, estima un GAF de 60%, con una prognosis y entiende que sí puede manejar sus fondos.
l. Examen Radiológico, consistente en un MRI de la espina cervical, realizado el 5 de mayo de 1998, por el Dr. Jorge Carrera. “Impression: Central disc bulging at C4-C5 and C5-C6 as described.”
m. Revisión Médica del Expediente, suscrita por el Dr. Manuel Colón Vargas, el 9 de junio de 1998. En la evaluación se indica que el paciente no tiene síntomas severos, por lo que no llena los requisitos del listado 11.04.
n. Notas de Progreso, suscrita en el Centro de Salud Conductual, el 11 de agosto de 2004. Se describe a una persona con arreglo personal normal, higiene normal, actividad psicomotora normal, cooperador, habla normal, ánimo normal, lenguaje normal, afecto amplio, orientación normal, atención normal, concentración normal, memoria normal, atención normal, concentración normal, sin alucinaciones, lógico, juicio bueno, introspección buena, buen control de impulsos. Se añade que el paciente se encuentra estable.
o. Notas de Progreso de la Escuela de Medicina de Ponce. En las notas se refleja que de una cita en abril de 2003, no regresó hasta junio de 2006. Sólo se realizaron visitas en dos ocasiones en el año 2006. En esa fecha se le diagnosticó desorden depresivo mayor, recurrente, sin rasgos sicóticos. Cabe señalar que la evidencia fue radicada a la Junta de Síndicos en noviembre de 2007.
p. Notas de Progreso, suscritas el 1 de junio de 2007. Se describe a una persona alerta, activo, orientado, en la parte neurológica no se indica sobre anormalidad alguna. Dentro de los diagnósticos se indica que padece de hipertensión. (Énfasis nuestro.) Págs. 350-363 del apéndice del recurso.”
Mediante el dictamen recurrido, la Junta de Síndicos confirmó la decisión de RETIRO denegando la pensión por incapacidad ocupacional.
Insatisfecho con dicho curso decisorio, el recurrente acude ante nos mediante el recurso que nos ocupa señalando la comisión por parte de la Junta de Síndicos de seis errores, los cuales, en síntesis, versan sobre la interpretación de la ley y el reglamento, la apreciación de la prueba pericial, la decisión del Seguro Social, la ausencia de evaluación para realizar otro trabajo y la ausencia de citación de un perito a la vista.
Estudiada la totalidad del expediente -que incluye la transcripción de la prueba oral y el alegato en oposición del recurrido- procedemos a resolver.
n
La Ley Núm. 447, supra, delimita un sistema de retiro y beneficios para los empleados del Gobierno de Puerto Rico. En relación a la incapacidad ocupacional, precisa que el empleado que queda incapacitado para el servicio como resultado de una incapacidad por causa del empleo o en el curso del mismo, tendrá derecho a recibir una anualidad siempre que, entre otros requisitos, se recibiera suficiente evidencia médica que pruebe su incapacidad conforme a los criterios que el Administrador fije mediante reglamento. Artículo 9, 3 L.P.R.A. see. 769. Para los fines de una anualidad por incapacidad *651 ocupacional o no ocupacional, se considerará incapacitado a un participante cuando su incapacidad sea sustentada con suficiente prueba médica conforme a los criterios fijados por el Administrador mediante reglamento y dicha prueba revele que el participante está imposibilitado para cumplir los deberes de cualquier cargo que en el servicio del patrono se le hubiera asignado. Artículo 11, supra, sec. 771.
Por otro lado, la Regla 24.4 del Reglamento General para la Concesión de Pensiones, Beneficios y Derechos, Núm. 4930, aprobado por la Administración de los Sistemas de Retiro, y que entró en vigor el 25 de junio de 1993, establece que:
“[s]i de la evidencia médica que consta en el expediente y conforme al listado de criterios médicos ("Adult Listings") establecidos para determinar incapacidad y del análisis que realicen los técnicos en determinación de incapacidad designados por el Administrador, no se pudiese determinar con certeza la incapacidad, se le podrá requerir al participante que se someta a aquellos exámenes médicos adicionales que se entiendan necesarios para adjudicar en sus méritos la petición por beneficios de incapacidad. Los exámenes médicos adicionales serán realizados por médicos seleccionados por el Administrador. Recibidos los resultados de dichos exámenes, el médico asesor hará la determinación final sobre incapacidad y someterá su recomendación al Administrador. Se considerará capacitado al participante, si no está total y permanentemente incapacitado e imposibilitado para cumplir los deberes de cualquier cargo que su patrono le hubiese asignado para trabajar en cualquier empleo retribuido, con un sueldo o retribución por lo menos igual a la que esta percibiendo.”
Los criterios médicos para probar incapacidad, mencionados en la Regla 24.4 del Reglamento General, supra, son los adoptados por las autoridades federales bajo la Ley de Seguridad Social Federal, 20 C.F.R. Pt. 404, Subpt. P., App. I.
La obligación de probar la incapacidad es de la persona que solicita la pensión. El estatuto establece que se considerará capacitado al empleado si no está total y permanentemente imposibilitado para cumplir los deberes de cualquier cargo que su patrono le hubiese asignado para trabajar en cualquier empleo retribuido, con un sueldo o retribución por lo menos igual al que está percibiendo. Se ha señalado en nuestro ordenamiento jurídico que la incapacidad que obligue al retiro al empleado con derecho a la anualidad por incapacidad debe ser de. tal naturaleza que le inhabilite para desempeñar las funciones de su empleo y de cualquier otro empleo remunerativo. Una incapacidad leve que limita las funciones de su trabajo o de cualquier otro empleo remunerativo, no da base para recibir una pensión bajo el estatuto. Sánchez v. A.S.R.E. G.J., 116 D.P.R. 372, 376 (1985).
Después de analizar el expediente de autos, pudimos observar que el recurrente tiene algunas limitaciones físicas. Sin embargo, no hay prueba de que su incapacidad sea total o que le impida efectuar algún otro trabajo. La Administración de los Sistemas de Retiro concluyó que Pellot Rodíguez no cumple con los requisitos de incapacidad para que se le conceda la pensión solicitada. Considerando, pues, que las agencias cuentan con el conocimiento experto y con la experiencia especializada, sus decisiones merecen la mayor deferencia judicial. Esta regla aplica, sobre todo,' cuando se trata de algo especializado como lo es tratar de determinar si una persona está incapacitada para trabajar. Además, es menester recordar que son las agencias las que tienen la oportunidad de escuchar y analizar la evidencia que se presenta en la vista.
Por otro lado, el recurrente no nos ha demostrado que existe prueba en el record que nos permita concluir que la determinación de la agencia no fue razonable de acuerdo con la totalidad de la prueba sometida. Aunque el recurrente nos hace varios señalamientos de errores, ninguno de ellos demuestra que la agencia actuó arbitrariamente o que la decisión fue irrazonable o parcializada. Por el contrario, en las ocasiones que Pellot Rodriguez acudió para que se reconsiderara la decisión emitida, la agencia siempre determinó que el recurrente no estaba incapacitado.
El hecho de que RETIRO utilice el mismo listado de criterios que usa la Administración de Seguro Social no la obliga en las determinaciones sobre incapacidad, más aun cuando el Reglamento de la Administración establece claramente el grado de incapacidad a probarse, que debe ser total y permanente. En específico, el empleado será considerado capaz si no prueba su incapacidad total y permanente. La agencia queda autorizada a determinar, basada en la evidencia sometida, si el empleado está capacitado para desempeñar las funciones de su empleo o cualquier otro trabajo remunerado. Esa determinación y especialización la tiene la agencia. A tales efectos, le concedemos deferencia a la decisión de la Junta. López Echevarria v. Adm. Sist. Retiro, 168 D.P.R. 749 (2006).
m
Por los fundamentos anteriormente expresados, confirmamos la decisión administrativa emitida por la Junta de *652 Síndicos.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
Dimarie Álicea Lozada
Secretaria-del Tribunal dé Apelaciones